IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Miscellaneous Case No.

BARBARA GORDON,

    Plaintiffs,

v.

JOHN BOYD COATES III, M.D.,

    Defendants.

## MOTION TO QUASH SUBPOENA
## DIRECTED TO NON-PARTY BARBARA GORDON

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), non-party Barbara Gordon respectfully moves the Court to quash the Subpoena to Testify at a Deposition in a Civil Action and Subpoena Duces Tecum directed at her, on the grounds that they are unduly burdensome and seek information protected by the attorney-client privilege and/or the attorney work product doctrine. In support of this Motion, Ms. Gordon would show the Court as follows:

### CERTIFICATE OF CONFERRAL

Undersigned counsel certifies that on September 18, 2019, he conferred with counsel issuing the subpoena, who advised that he opposes this Motion to Quash.

### INTRODUCTION

Discovery is intended "to provide orderly, efficient and effective means for ascertaining truth in order to expedite determination of controversy on merits; such purpose not only demands dignity, order and decorum, but also unswerving attention to business at hand." *Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc.*, 54 F.R.D. 551, 553 (S.D.N.Y.

1972). The business at hand in this case is to ascertain whether Dr. John Boyd Coates III, M.D., fraudulently inseminated Barbara Gordon's mother using his own semen. The Senior District Court Judge presiding over this case holds "the business at hand" well in his hand. He has ordered Dr. Coates to provide a buccal swab for DNA testing; upon information and belief, an order for such testing is forthcoming. The testing will be conclusive. Nevertheless, for no purpose related to the truth finding that must occur in this case, Dr. Coates wants to depose Ms. Gordon. Ostensibly, he wants to ask about the process she followed to deduce that Dr. Coates is her biological father. This discovery serves only to needlessly burden, harass, and annoy. Therefore, the Court should quash the Subpoenas because they are unduly burdensome and request information protected by the attorney-client privilege and the work product doctrine.

## BACKGROUND

In the case of *Cheryl Rousseau and Peter Rousseau v. John Boyd Coates III, M.D.*, Civil Action No. 2:18-cv-205, pending in the United States District Court for the District of Vermont, the Defendant, John Boyd Coates III, M.D., subpoenaed Barbara Gordon, a non-party, to testify and produce documents on September 25, 2019, in Denver Colorado. A copy of the Subpoena is attached as **Exhibit A**.

In that lawsuit, Cheryl Rousseau and Peter Rousseau are suing Dr. Coates for fraudulent insemination. The Rousseaus are Ms. Gordon's parents. Dr. Coates was Cheryl Rousseau's fertility doctor. Motivated to obtain genetic information potentially to aid her own son's medical condition, Ms. Gordon undertook genetic testing hoping to identify her donor biological father. Through her investigation, Ms. Gordon deduced that Dr. Coates is her biological father. She deduced that her mother's own doctor used his own semen to inseminate her mother, as opposed to using the semen of an anonymous donor. This resulted in Ms. Gordon's conception and birth.

Roland Baker, an U.C. Berkeley graduate in molecular genetics, validated this deduction. Hence, the fraudulent insemination suit.

On July 17, 2019, Senior District Court Judge William K. Sessions III of the Vermont U.S. District Court required Dr. Coates to furnish a buccal swap for DNA testing pursuant to Fed. R. Civ. P. 35(a), and directed the parties to propose the manner of DNA testing. *See* **Exhibit B.** Specifically, Judge Sessions ordered:

> (1) The Rousseaus' motion to compel a buccal swab (ECF No. 25) is granted;
>
> (2) counsel for the Rousseaus shall prepare a proposed order that includes safeguards such as those provided in the Vermont Parentage Act, as well as the date, place, manner, conditions, and scope of the examination, including the person or persons who will perform it; provide the proposed order to Dr. Coates's counsel for comments and consent; and submit a stipulated proposed order to the Court within 14 days of this Order;
>
> (3) in the event the parties are unable to agree on a stipulated proposed order, they shall each submit proposed orders to the Court within 21 days of this Order.

*Id.* Ms. Gordon also has volunteered to undergo genetic testing in the lawsuit. Together, these tests conclusively will establish paternity.

Significantly, in issuing the referenced Order, Judge Sessions found "good cause" for the buccal swab and DNA testing on the following basis:

> The Court further finds that the Rousseaus have shown good cause for a swab test. At oral argument, the Rousseaus' counsel informed the court that initial DNA-related information was accessed by means of a service or services such as Ancestry.com or 23andMe.com. Such services may be subject to "a variety of

> attacks"[1] on reliability, including questions about chain of custody, testing methods, and error rates. *Id.* at 655. Legally conclusive evidence is therefore unavailable, and as Dr. Coates denies paternity, there is good cause for further testing. *See D'Angelo v. Potter,* 224 F.R.D. 300, 304 (D. Mass. 2004) (finding good cause to order a DNA examination where plaintiff lacked alternative methods for proving her allegations).

*Id.* Upon information and belief, Dr. Coates and the Rousseaus submitted to the court competing proposed orders as to the manner and method of DNA testing, and an order is forthcoming.

Despite these events, on September 12, 2019, Dr. Coates subpoenaed Ms. Gordon, ostensibly, according to his lawyer, to explore the process she undertook (referenced in the language quoted above) to deduce that Dr. Coates is her biological father. But that is neither here nor there; certainly not relevant – and clearly harassing and an annoyance – in light of the forthcoming Court ordered for DNA testing. Further, Dr. Coates can conduct discovery of the Plaintiffs if he wishes to ascertain the basis upon which *they* filed suit.

Nevertheless, Dr. Coates requests 11 categories of documents and seeks to depose Ms. Gordon. These requests range from the needlessly absurd -- "letters, emails or other writings sent by Barbara Gordon *to Dr. John Coates*" – to the needlessly broad, duplicative, prying and objectionable – "letters, emails or other writings *that pertain in any way* to the pending lawsuit . . . ." Exhibit A, Schedule A (emphasis added). Presumably, Dr. Coates intends to delve in to the same and similar topics at the deposition.

---

[1] While such genealogical/genetic testing sources may as yet be inadequate to establish identity in a legal proceeding, they are increasingly used as aides for making identifications that allow confirmed testing to occur. This is no more true than with respect to cold homicide cases. *See, e.g.,* **'This is just the beginning': Using DNA and genealogy to crack years-old cold cases**; https://www.nbcnews.com/news/us-news/just-beginning-using-dna-genealogy-crack-years-old-cold-cases-n892126

On its face, Dr. Coates' Subpoena is unduly burdensome. It seeks information not relevant to the lawsuit. Much of this information falls categorically within the possession of Dr. Coates, his acknowledged offspring, and the Plaintiffs. It seeks information concerning the process by which Ms. Gordon deduced that Dr. Coates used his semen to inseminate her mother. This information is of no probative value, especially in light of the impending DNA testing. It also encompasses privileged materials, for Ms. Gordon has legal counsel with whom she has communicated in writing about her parents' lawsuit. Under these conditions, the Court "must quash or modify [the] subpoena . . . ." Fed. R. Civ. P. 45(d)(3)(A). Clearly, the discovery is designed to unduly burden, harass, and annoy Ms. Gordon and to conduct a fishing expedition into how she learned about Dr. Coates' malfeasance.

Accordingly, the Court should Grant Ms. Gordon's Motion to Quash. The Court should also award Ms. Gordon her fees and costs associated with this Motion.

## DISCUSSION

Fed. R. Civ. P. 45 governs discovery from non-parties by subpoena for deposition and document production. Fed. R. Civ. P. 26(b)(1) sets forth the scope of permissible non-party discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Further, "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.*

A subpoenaed non-party may file a motion to quash if the subpoena subjects the non-party to undue burden or requires disclosure of privileged material. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv); *see also General Steel Domestic Sales, LLC v. Chumley,* No. 13–cv–769–MSK–KMT, 2014 WL 3057496, at *1 (D.Colo. July 7, 2014) (motion to quash non-party discovery granted when information sought was "overbroad, irrelevant, unnecessary, and was a fishing expedition

5

{308113}

designed to gain information . . . not for purposes of [the] litigation"); *Spacecon Spec. Contractors, LLC v. Bensinger,* No. 09–cv–2080–REB–KLM, 2010 WL 3927783, at *2 (D.Colo. Oct. 1, 2010).

Ms. Gordon, as the objecting non-party, bears the burden of showing that the discovery is objectionable. *Klesch & Co. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D.Colo. 2003). In evaluating undue burden, the Court weighs the burden to the subpoenaed party against the value of the information to the requesting party. "Generally, this requires consideration of relevance, the need of the party for the [information], the breadth of the [information] request, the time period covered by it, ... [and] the burden imposed." *DISH Network, LLC v. INNET,* No. 13–cv–00832–PAB–KLM, 2014 WL 1628132, at *3 (D. Colo. April 24, 2014). Significantly, the status of a person as a non-party is a factor which weighs against disclosure. *Echostar Commc'n Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998) (citing *Am. Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987)); *see also Spacecon,* 2010 WL 3927783, at *3. Further, "a subpoena is more likely to impose an undue burden when it seeks information available from a party to the action . . . ." *Infinity Home Collection v. Coleman,* No. 17–mc–00200–MSK–MEH, 2018 WL 1733262, at *2 (D.Colo. April 10, 2018).

Here, the nature of the discovery is such that any burden is undue; the discovery is clearly overbroad, irrelevant, unnecessary, and a fishing expedition. The salient issues in the lawsuit are (1) whether Dr. Coates inseminated Ms. Rousseau using his own semen, resulting in the conception and birth of Ms. Gordon; (2) whether Dr. Coates acted fraudulently; and (3) what damages did Dr. Coates' fraudulent actions cause the Rousseaus. The first issue will be resolved conclusively by the DNA tests that the Vermont Federal District Court orders of Dr. Coates and that Ms. Gordon volunteered to provide. Additional discovery from Ms. Gordon offers nothing of consequence. With respect to the second issue, Ms. Gordon was not alive when Dr. Coates committed his

malfeasance. With respect to the third issue, Ms. Gordon was grown and had her own child by the time she deduced Dr. Coates' malfeasance. In either case, Ms. Gordon personally would not have relevant information.

Reviewing the discovery requests separately reinforces their undue burdensomeness, as well as the impropriety of deposing Ms. Gordon.

- Request No. 1 requires production of letters, emails or other writings Ms. Gordon sent to Dr. Coates. Ms. Gordon should not be unnecessarily burdened with producing information which by its nature would be in Dr. Coates' possession.

- Request No. 2 requires production of letters, emails, or other writings Ms. Gordon sent to "children of Dr. John Coates." Presumably, Dr. Coates refers to his acknowledged biological children. However, there is no reason this information should be sought by subpoena from Ms. Gordon ahead of these complicit children, who, according to Dr. Coates, denounce Ms. Gordon and reported to him her efforts to meet them. Further, whether any possible communication between Ms. Gordon and these children would be relevant, the request is not tailored to capture only relevant information. Any relationship Ms. Gordon may – or may not – have established with these persons bears no connection to an issue of consequence in the lawsuit.

- Request Nos. 3, 4, 5, 6, and 7 seek information about the process Ms. Gordon undertook by which she deduced that Dr. Coates used his own semen to inseminate her mother. This includes correspondence between Ms. Gordon and two popular DNA testing services, 23andMe and Ancestry.com. It also includes correspondence between Ms. Gordon and Roland Baker, who reviewed Ms. Gordon's deduction about Dr. Coates. How Ms. Gordon came to the conclusion about Dr. Coates' paternity has no bearing on

the lawsuit; only the accuracy of the conclusion matters. As stated heretofore, Ms. Gordon's efforts are immaterial because of the court-ordered DNA testing of Dr. Coates and the testing Ms. Gordon volunteered to undertake.

- Request Nos. 8, 9, and 10 require production of letters, emails or other writings between Ms. Gordon and her parents regarding the DNA testing she had conducted (including correspondence with 23andMe and Ancestry.com) and her communications with Roland Baker. This information is irrelevant for the reasons set forth in the previous bullet point. Further, the Rousseaus are the Plaintiffs – parties to the lawsuit. Again, there is no reason to burden a non-party for information that, if relevant, would be equally in the possession of the Plaintiffs.

- Request No. 11 very broadly requires Ms. Gordon to produce "*all* letters, emails or other writings *that pertain in any way* to the pending lawsuit . . . ." (Emphasis added). Initially, Ms. Gordon objects to this request on grounds that it seeks information protected by the attorney-client privilege and the work product doctrine. For example, correspondence between undersigned counsel and Ms. Gordon regarding Dr. Coates' Subpoena and this Motion to Quash fall within this discovery request. Further, the request encompasses everything that would be produced pursuant to Request Nos. 1-10 and more. Clearly this is a fishing expedition to find out what, if anything, has been shared between Ms. Gordon and her parents about Dr. Coates' malfeasance and the resultant lawsuit. Such a request is a relevance guessing game that the Court should not be permit.

Lastly, upon information and belief, Ms. Gordon may not be the only person to deduce that Dr. Coates inseminated her/his mother using his own semen. Upon information and belief, Dr.

Coates fears that other biological children of his, conceived through artificial insemination with his sperm, will discover his paternity.  Upon information and belief, Dr. Coates fears that he will be exposed to further litigation and financial consequences.  Because the discovery sought of Ms. Gordon bears no reasonable connection to the issues in the Vermont lawsuit, it is clear Dr. Coates seeks prophylactically to evaluate and mitigate future risk.  He is on fishing expedition, which the Court should not allow.

## CONCLUSION

For the foregoing reasons, Barbara Gordon respectfully requests that the Court grant her Motion to Quash and Order Defendant John Boyd Coates III, M.D., to pay the costs and fees she incurred as a result of his unduly burdensome discovery.

Dated this 20th day of September, 2019.

*/s/ Phillip L. Douglass*
Phillip L. Douglass, #28152
Miro Kovacevic,  #35981
Goodspeed & Merrill
7800 East Union Avenue, Suite 600
Denver, CO 80237
Telephone: 720-287-6981
Facsimile: 720-473-7647
pdouglass@goodspeedmerrill.com
mk@goodspeedmerrill.com
*Attorneys for Non-Party Barbara Gordon*

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September, 2019, a true and correct copy of the foregoing was filed and served via electronic mail to the following:

Peter B. Joslin
THERIAULT & JOSLIN, P.C.
141 Main Street, Suite 4
Montpelier, Vermont 056032

Celeste E. Laramie
GRAVEL & SHEA
76 St. Paul Street, 7th Floor
Burlington, Vermont 05402

                                                   */s/ Phillip L. Douglass*
                                                   Phillip L. Douglass